United States District Court
Southern District of Texas
**ENTERED**
June 07, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MEMORAL HERMANN HEALTH SYSTEM, § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | CIVIL ACTION NO. 4:14-cv-02572 |
| § | |
| SOUTHWEST LTC, LTD. EMPLOYEE § | |
| BENEFITS PLAN, *et. al.*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND RECOMMENDATION ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

This matter was referred by United States District Judge Vanessa D. Gilmore, for full pre-trial management, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B).  (Docket Entry No. 26).  Plaintiff Memorial Hermann Health System ["Memorial Hermann"] brings suit against Defendants Southwest LTC, Ltd. Employee Benefits Plan ["Southwest LTC Plan"] and Southwest LTC, Ltd. ["Southwest LTC"], alleging violations of the Employee Retirement Income Security Act ["ERISA"], 29 U.S.C. §§ 1001 *et seq.*.  (Plaintiff's Second Amended Complaint ["Complaint"], Docket Entry No. 20, at ¶¶ 12-24).  Before the court is Defendants' motion for summary judgment.  (Defendants Southwest LTC, Ltd. Employee Benefits Plan and Southwest LTC, Ltd.'s Motion for Summary Judgment on the Threshold Issue of Failure to Exhaust Administrative Remedies and Memorandum in Support ["Motion"], Docket Entry No. 37).  Plaintiff has responded in opposition to the motion, and Defendants have replied.  (Plaintiff's Response to Defendants' Motion for Summary Judgment ["Response"], Docket Entry No. 38; Defendants Southwest LTC, Ltd. Employee Benefits Plan and Southwest LTC, Ltd.'s Reply in Support of their Motion for Summary Judgment on the Threshold Issue of Failure to Exhaust

Administrative Remedies ["Reply"], Docket Entry No. 39). After considering the pleadings, the evidence submitted, and the applicable law, it is RECOMMENDED that Defendants' motion be GRANTED.

## I. Background

CW ["CW," or the "Patient"] began working for Defendant Southwest LTC on February 28, 2012. (Affidavit of Sheri Ferguson ["Ferguson Affidavit"], Docket Entry No. 37-1, at ¶ 6). At that time, she elected to participate in the company's ERISA-governed employee health benefits plan, the Southwest LTC Plan [the "Plan"]. CW became eligible for coverage under the Plan on June 1, 2012.[1] (Affidavit of Ronald R. Payne ["Payne Affidavit"], Docket Entry No. 37-2, at ¶ 6, Ex. C ).

The main provisions of the Southwest LTC Plan are set out in the Plan Document and Summary Plan Description ["Plan Document"]. The preamble to the Plan Document designates Southwest LTC as the Plan Administrator, and states that the Plan "provide[s] for the payment or reimbursement of eligible [medical] expenses under the Plan that are incurred by [] Employees and their eligible Dependents." (Compl. Ex. A at 5). Article IX of the Plan Document contains an exclusion for pre-existing conditions,[2] which provides, in relevant part, as follows:

> During the first twelve Months . . . from the Enrollment Date . . . this Plan will not provide benefits for a Covered Person for any condition, regardless of the cause of the condition, other than Pregnancy, for which medical advice, diagnosis, care or

---

1. Southwest LTC employees hired after the effective date of the Plan, July 1, 2003, "become eligible for coverage on the first day of the Month coinciding with or next following the Employee's completion of the Waiting Period." (Payne Aff. Ex. C at 1). The term "Waiting Period" is defined as "any period of time imposed by the Plan between the first day of employment and the first day of eligibility for coverage under the Plan." (Payne Aff. Ex. B at 3). The applicable "Waiting Period" for "active full-time employees" is ninety days. (Payne Aff. Ex. C at 1).

2. The Plan Document defines a "pre-existing condition" as "any condition, regardless of the cause of the condition, for which medical advice, diagnosis, care or treatment was recommended or received by a health care provider or practitioner duly licensed to provide such care under state law and operating within the scope of said license, within the period ending on the Enrollment Date[.]" (Payne Aff. Ex. A at 1).

>   treatment was recommended or received within the six Month period ending on the Enrollment Date, by a health care provider or practitioner duly licensed to provide such care under state law and operating within the scope of said license.

(Payne Aff., Ex. B at 3).

From June 28, 2012, through August 2, 2012, CW was treated by Plaintiff Memorial Hermann, a hospital located in Houston, Texas, for a spinal fracture and severe spinal stenosis. (Compl. ¶¶ 4-5, Ex. B, Ex. C; Mot. 6). CW underwent a T8-L3 posterior spinal fusion, T12-L1 laminectomies, irrigation, and debridement of an L1 epidural abscess. (Compl. ¶ 4, Ex. E). Prior to that treatment, CW executed an "Irrevocable Assignment of Insurance Benefits," in Memorial Hermann's favor, on June 27, 2012. (Compl. Ex. N). That assignment provided, in relevant part, that:

>   In consideration of services rendered, I hereby irrevocably assign and transfer to the hospital for myself and my dependents, all rights, title[,] and interest in the benefits payable for services rendered by the hospital provided in any insurance policy(ies) under which I or any of my dependents are insured. Said irrevocable assignment and transfer shall be for the purpose of granting the hospital an independent right of recovery[.]

(*Id.*).

Before admitting CW to its facility, Memorial Hermann contacted Defendants' third party claims administrator, Meritain Health ["Meritain"],[3] to confirm that she had "effective coverage" under the Plan.[4] (Compl. ¶ 4, Ex. C; *see* Compl. Ex. A at 5, 11). "Brenda B.," a

---

3. Meritain's official title is Plan Supervisor. (Compl. Ex. A at 11). The Plan Document defines the term "Plan Supervisor" to mean "the firm providing administrative and consulting services to [Southwest LTC] in connection with the operation of the Plan and performing such other functions, including processing and payment of claims, as may be delegated to it." (*Id.*).

4. Meritain verified that CW's coverage under the Southwest LTC Plan was effective, as of June 1, 2012. (Compl. Ex. C). Pursuant to the terms of coverage, after the Patient met her $1,500.00 deductible, Southwest LTC agreed to pay 80% of all expenses until the Patient reached an out-of-pocket limit of $2,500.00. (*Id.*). Thereafter, the Plan paid medical benefits at 100% with an unlimited lifetime maximum. (*Id.*).

Meritain employee, reportedly authorized all services that CW was to receive at Memorial Hermann.  (Resp. 2 ¶ 6; *see* Compl. Ex. F).

Three weeks later, on July 23, 2012, Meritain sent CW a letter, in which it requested certain information "necessary" to process her claim for benefits under the Plan.  (Mot. 6; Affidavit of Nicole Sanchez ["Sanchez Affidavit"], Docket Entry No. 37-3, at Ex. I).  That letter stated the following:

> We have received a claim for charges incurred by [CW].  It is necessary that you complete the attached questionnaire before we can determine benefits for this claim.
>
> Please note that this plan contains a provision that limits the benefits for treatment of a pre-existing condition; however, the determination of the length of this limitation may be affected by any prior coverage the patient may have had.  Please provide a certificate of creditable coverage (HIPAA certificate) from your prior employer if you were covered under another group plan prior to your enrollment date under this Plan.  The certificate must show at least 12-18 months of creditable coverage with no more than a 63-day break in coverage.
>
> Under separate cover, you will receive an Explanation of Benefits, which will document the denial of this claim.
>
> Please read the enclosed Appeal Process Notice carefully.  If you have any questions, please feel free to contact our customer service department at (xxx) xxx-xxxx.

(Sanchez Aff., Ex. I at 1).  CW did not complete the questionnaire, or otherwise respond to the July 23, 2012 letter from Meritain.  (Sanchez Aff. ¶ 13).

On August 2, 2012, CW was discharged from Memorial Hermann.  (Compl. ¶ 5; Mot. 6 ¶ 10).  The hospital then submitted an itemized claim to Meritain, seeking $465,156.86 in payment for "the services and supplies authorized by Defendant[s] and provided to the Defendant[s'] insured."  (Compl. ¶ 5, Ex. G).  On September 25, 2012, Meritain issued an Explanation of Benefits, in which it placed "a hold" on Memorial Hermann's claim, to determine whether CW had any preexisting medical conditions that might bar coverage.  (Compl. ¶ 5, Ex. H).

When Memorial Hermann got no response from Meritain within a month regarding the status of the claim, it referred the matter to a law firm, Sullins, Johnston, Rohrbach & Magers ["Sullins Johnston"].  (Sanchez Aff. Ex. A).  On October 31, 2012, Sullins Johnston, on behalf of Memorial Hermann, requested an "appeal or review" of Defendants' nonpayment of the claim from Meritain.  (*Id.*).  Meritain responded to the request, on November 19, 2012, in relevant part, as set out below:

> Please be advised that [CW] is a participant in an employer sponsored self-funded plan (the Plan), which is governed by ERISA.  The Plan is the Southwest LTC, Ltd. Employee Benefits Plan.  Meritain Health, Inc. (Meritain) is the third party claims administrator for the Plan.  Meritain Health is not an insurance company.
>
> * * *
>
> [W]e are currently awaiting information to be returned from the patient in order to further process the claim in question.  Once this information is received, the claim in question will be processed according to the Plan provisions.
>
> Should you require any further specific information regarding this claim, please provide us with [a] HIPAA Compliant Authorization signed by [CW].

(Sanchez Aff. Ex. B at 1).  Attached to the November 19, 2012 letter from Meritain was an Authorization for Release of Protected Health Information, which was to be completed by CW. (*See* Sanchez Aff. Ex. B at 2-3).

Approximately three months later, on February 8, 2013, Sullins Johnston sent another letter to Meritain, in which it demanded all documents relied upon by Defendants "to support the [continued] denial [of the claim] and as permitted under ERISA."  (Sanchez Aff. Ex. C). However, the February 8, 2013 letter neither included, nor made reference, to a written authorization from CW.  (Sanchez Aff. ¶ 6, Ex. C).  By letter dated February 15, 2013, Meritain informed the law firm that it was "still waiting on information to be returned from the patient."

(Sanchez Aff. Ex. D).  In that letter, Meritain repeated its contention that it was "unable to discuss th[e] matter [] in fuller detail without a recent authorization signed by [CW]." (*Id.*).

Plaintiff, through its attorneys, made additional requests for Plan documents, on May 7, 2013, on June 4, 2013, and on June 27, 2013.  (Compl. Ex. L; Sanchez Aff. Ex. E, Ex. G).  None of those requests contained, or made reference to, a written authorization or assignment from CW.  (Sanchez Aff. ¶¶ 8, 10; *see* Compl. Ex. L).  In response to those requests, Meritain reported that it was still awaiting documentation from CW so that it could process the claim.  (Sanchez Aff. Ex. F; *see* Compl. Ex. L).  Meritain continued to maintain that it could not discuss the claim in any "further detail," or provide any documentation relating to the claim, because it did not have a HIPPA-compliant patient authorization from CW.  (Sanchez Aff. Ex. F).

On November 20, 2013, after hearing nothing from Defendants for almost five months, Plaintiff, through its counsel, made a final request to Meritain for "a copy of the plan, as well as all documents upon which the administrator is basing [it]s continued denial of th[e] claim." (Compl. Ex. M).  As with all of its previous correspondence, Plaintiff's November 20, 2013 letter neither included, nor made reference to, a written authorization from CW.  (*See id.*).

On March 20, 2014, Plaintiff filed this action, in Texas state court, against Southwest LTC Plan, asserting a claim for breach of contract, as well as a claim to recover benefits under ERISA 29 U.S.C. § 1132(a)(1)(B), and a claim for failure to comply with a request for information under ERISA 29 U.S.C. § 1132(c)(1)(B).  (Docket Entry No. 1-2 at 2-10).  Plaintiff amended its complaint on May 30, 2014.  (Docket Entry No. 1-2 at 12-20).  On September 5, 2014, the case was removed to federal court, on the basis of ERISA federal question jurisdiction. (Docket Entry No. 1).

Following removal, Southwest LTC Plan filed a motion to dismiss the Amended Complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket Entry No. 7). The court granted Defendant's motion, in part, on February 26, 2015, but allowed Plaintiff to amend its pleadings. (Docket Entry No. 18). On March 9, 2015, Plaintiff filed a Second Amended Complaint, adding Southwest LTC as a defendant, and, once again, lodging claims for recovery of benefits under ERISA 29 U.S.C. § 1132(a)(1)(B), and for a failure to comply with a request for information under ERISA 29 U.S.C. § 1132(c)(1)(B). (Compl. ¶¶ 3, 12-24). Plaintiff's § 1132(c)(1)(B) claim was subsequently dismissed, for failure to state a claim, on December 8, 2015. (Docket Entry No. 31; *see* Docket Entry No. 29 at 12). As a result, only Plaintiff's § 1132(a)(1)(B) claim remains at issue.

Defendants now move for summary judgment. From a review of the pleadings, the evidence submitted, and the applicable law, the court concludes that Defendants' motion should be granted. Further, all pending discovery requests and disputes should be considered moot.

## II. Standard of Review

Summary judgment is appropriate if the record discloses "that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (a). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (internal citations omitted).

"The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The moving party, however, need not negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (internal quotation marks omitted). If the moving party meets its initial burden, however, "the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). "[T]he nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim." *Id.* (quoting *Quorum Health Res., L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 471 (5th Cir. 2002). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008). However, the court is "not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions[,] which are either entirely unsupported[,] or supported by a mere scintilla of evidence." *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2008) (citing *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 413 (5th Cir. 2003)).

### III. Analysis

Memorial Hermann makes a claim, pursuant to 29 U.S.C. § 1132(a)(1)(B), to recover the benefits allegedly owed to CW under the Southwest LTC Plan. (Compl. ¶¶ 12-19). That

provision allows a plan participant or beneficiary to bring a civil action "to recover benefits due . . . under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Defendants seek summary judgment on this claim, arguing that Plaintiff has failed to show that either Memorial Hermann, or CW, exhausted the administrative remedies applicable to a claim for benefits under the Southwest LTC Plan. (Mot. 11-15).

The Southwest LTC Plan is explicit that "[n]o action at law or in equity can be brought to recover on this Plan until the appeals procedure has been exhausted as described in this Plan." (Compl. Ex. A at 17). Article XIII of the Plan Document details the administrative procedure that an employee must follow to file a claim for benefits, and to appeal a denial of a claim for benefits. (*Id.* at 12-18). To initiate the claims process, a "Covered Person"[5] must "file[] a claim for benefits in accordance with the terms of the Plan specific to each type of claim[.]" (*Id.* at 13). With regard to claims submitted after service has been rendered, the Plan Document states that "[i]t is the responsibility of the Employee to make certain each [claim] submitted by h[er] or on h[er] behalf includes all information necessary to process the claim." (*Id.*). If a claim for benefits is denied, the "Covered Person" may appeal the denial by submitting a "request for review" to the "Plan Administrator" within 180 days "after the claim payment date or the date of the notification of a denial of benefits." (*Id.* at 15-16). The request for review "must be in writing, stating in clear and concise terms the reason or reasons for this disagreement with the handling of the claim." (*Id.* at 16). The Plan Document makes clear that Southwest LTC, as the Plan Administrator, has the exclusive authority to "interpret the Plan" and to "determine all questions arising in the administration, interpretation, and application of the Plan." (*Id.* at 19).

---

5. The Plan Document defines a "Covered Person" to be "any Employee or Dependent who has met the eligibility requirements if the . . . Plan while such person is covered hereunder." (Compl. Ex. A at 7).

In the Motion, Defendants argue that Plaintiff has failed to show that the administrative procedure set out in the Plan Document was ever "properly invoked," much less that it was exhausted, because it is "undisputed" that CW "did nothing" to invoke her administrative remedies, and because, despite "repeated requests" from Meritain, Memorial Hermann never provided Defendants with any "proof" that it had the authority to do so. (Mot. 11, 14). Defendants contend further that, even if Plaintiff could exercise administrative remedies on CW's behalf, "the undisputed evidence demonstrates that [it] did not actually do so," because "neither [Memorial Hermann] nor [its] counsel ever directed any request for review to the Plan Administrator as required by the express terms of the Southwest LTC Plan Document." (*Id.* at 14).

In response, Memorial Hermann does not argue that it, or CW, actually exhausted all of the administrative remedies available under the Southwest LTC Plan. Instead, Plaintiff insists that its failure to do so should be excused, because an administrative review of CW's hospitalization claim would have been futile, and because Memorial Hermann was denied "meaningful access" to administrative remedies. (Resp. 10-13). In addition and, in the alternative, Plaintiff contends that its "repeated requests for a copy of the Plan and documents" from Meritain was enough to exhaust the administrative remedies under the Plan. (*Id.* at 13-15). Finally, Plaintiff argues that the administrative remedies available under the Plan are "deemed exhausted," under 29 C.F.R. § 2560.503-1, because Defendants' claims procedure is "per se unreasonable." (*Id.* at 15-17).

There is no question that in the Fifth Circuit, a plan participant must exhaust all administrative remedies available under an ERISA plan before bringing suit to recover benefits. *Swanson v. Hearst Corp. Long Term Disability Plan*, 586 F.3d 1016, 1018 (5th Cir. 2009);

*Bourgeois v. Pension Plan for the Emps. of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000); *see Brown v. Star Enter.*, 881 F. Supp. 257, 259 (E.D. Tex. 1995) ("A plaintiff may not make an initial claim for ERISA benefits in a lawsuit."). The purpose of the exhaustion requirement is to "minimize the number of frivolous ERISA suits," and to "promote the consistent treatment of benefit claims," as well as to "provide a clear record of administrative action if litigation should ensue," and to "assure that judicial review is made under the arbitrary and capricious standard, not de novo." *Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 231 (5th Cir. 1997); *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1309 (5th Cir. 1994); *Makar v. Health Care Corp.*, 872 F.2d 80, 83 (4th Cir. 1989). "[T]hese policies require claimants to make some attempt at obtaining their benefits through the administrative route, or, at the very least, to make some effort to learn of the procedures applicable to them." *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1279 (5th Cir. 1990); *see Bourgeois*, 215 F.3d at 480 (stating that an ERISA claimant has "a duty to seek the necessary information even if it has not been made available").

Application of the exhaustion requirement is, however, "a matter within the trial court's discretion." *Porter v. Atchinson, Topeka, & Santa Fe R.R. Co.*, 768 F. Supp. 571, 575 (N.D. Tex. 1991); *see Hall*, 105 F.3d at 231. "[E]xceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, 782 F. Supp. 2d 294, 304 (S.D. Tex. 2011) (quoting *Hessbrook v. Lennon*, 777 F.2d 999, 1003 (5th Cir. 1985)).

Plaintiff argues that exhausting the administrative appeals process in this case would be "futile," because it has already "made numerous pre-litigation attempts to communicate with

[Southwest LTC] and [it] has, over a prolonged series of communications, been denied any information pertaining to the denial of its claim." (Resp. 11-12). However, futility requires a showing of "hostility or bias" on the part of the Plan Administrator. *Denton v. First Nat'l Bank of Waco*, 765 F.2d 1295, 1303 (5th Cir. 1985); *see Brown*, 881 F. Supp. at 259 ("Futility of appeal will serve as an exception to the administrative exhaustion requirement only if a plaintiff can make a clear showing that the plan administrators harbor bitterness and hostility for the claimant."). In this case, Plaintiff has neither alleged, nor submitted evidence to show, that Southwest LTC, or its third-party claims administrator, Meritain, acted in a "hostile or biased" manner toward the claimant. Plaintiff's futility argument fails for that reason. *See McGowin v. ManPower Int'l, Inc.*, 363 F.3d 556, 559 (5th Cir. 2004) ("A failure to show hostility or bias on the part of the administrative review committee is fatal to a claim of futility."); *Gonzalez v. Aztex Advantage*, 547 F. App'x 424, 428 (5th Cir. 2013); *Harris v. Trustmark Nat'l Bank*, 287 F. App'x 283, 294 (5th Cir. 2008); *Brown*, 881 F. Supp. at 259-60.

Plaintiff also argues that Defendants' "refusal" to "deliver any information relied upon in denying Memorial Hermann's claim" effectively precluded "meaningful access" to the administrative appeals process. (Resp. 12-13). This argument is also without merit. The record is clear that in response to each of Memorial Hermann's requests for information regarding the claim, Meritain informed the hospital that it was "unable to discuss th[e] matter [] in further detail without a recent authorization signed by the patient." (Sanchez Aff. Ex. D, Ex. F; *see* Sanchez Aff. Ex. B at 1). Plaintiff never provided the requested authorization from CW, or even informed Meritain of its purported status as CW's assignee. *See Barix Clinics of Ohio, Inc. v. Longaberger Family of Cos. Group Med. Plan*, 459 F. Supp. 2d 617, 625 (S.D. Ohio 2005) (noting that "a plan administrator is under no obligation to disclose plan documents to third

parties without written authorization from a participant or beneficiary"). On this record, there is no evidence that Defendants attempted to shield information from Plaintiff. *See McGowin*, 363 F.3d at 560 (finding that a plaintiff had failed to allege that she was denied "meaningful access" to administrative remedies, because there was "no indication that [she] requested the plan documents or was told specifically that she could not obtain them"). As a result, Plaintiff's "meaningful access" argument fails. *McGowin*, 363 F.3d at 560; *Bernal v. Randall's Food & Drugs, Inc.*, No. CA 3-96-CV-3464-R, 1998 WL 246640, at *10 (N.D. Tex. Mar. 24, 1998).

Memorial Hermann next argues that, even though it did not submit a written "request for review" to Southwest LTC, its "requests for pertinent claim documents and Plan documents" from Meritain should be treated as "requests upon the Plan Administrator directly," because Meritain is Southwest LTC's "duly authorized agent and representative." (Resp. 14-15). Plaintiff emphasizes that its attorneys gave Meritain "clear notice" of its "intent to pursue administrative remedies," and argues that such notice is enough to satisfy the exhaustion requirement. (*Id.* at 14). However, the Fifth Circuit has made clear that a claimant cannot circumvent the administrative appeal process through any informal means. *See Moss v. Unum Group*, --- F. App'x ----, 2016 WL 424638, at *2 (5th Cir. 2016) ("Allowing informal attempts to substitute for the formal claims procedure would frustrate the primary purposes of the exhaustion requirement.") (alteration omitted); *see also Swanson v. Hearst Corp. Long Term Disability Plan*, 586 F.3d 1016, 1017 (5th Cir. 2009); *Harris*, 287 F. App'x at 295; *Rogers v. Metro. Life Ins. Co.*, No. 1:15-cv-00081-GHD-SSA, 2015 WL 7076643, at *6-7 (N.D. Miss. Nov. 10, 2015).

In this case, the Plan Document states unequivocally that a "request for review" must come from a "Covered Person." (Compl. Ex. A at 15). Plaintiff was also instructed, explicitly and repeatedly, by Meritain that it could not pursue an administrative appeal on behalf of CW

without written authorization from the Patient. (Sanchez Aff. Ex. B, Ex. D, Ex. F). Instead of submitting the requested authorization from CW, Memorial Hermann chose to file this lawsuit. Its failure to follow the Plan's administrative process is, consequently, fatal to its claims. *See Swanson*, 586 F.3d at 1017; *Piecznski*, 354 F. App'x at 210; *Simmons v. Liberty Life Assurance Co. of Boston*, No. 4:11-CV-04609, 2013 WL 2482739, at *4 (S.D. Tex. Jun. 10, 2013).

Finally, Plaintiff contends that it is exempt from the exhaustion requirement, because Defendants' claims procedure is "per se unreasonable." under 29 C.F.R. § 2560.503-1. (Resp. 15-17). "ERISA provides certain minimal procedural requirements upon an administrator's denial of a benefits claim." *Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533, 539 (5th Cir. 2007). The plan administrator must "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1). The plan administrator must also "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). If the plan fails "to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan . . . on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." 29 C.F.R. § 2560.503-1; *Koehler v. Aetna Health Inc.*, 683 F.3d 182, 191 (5th Cir. 2012).

Plaintiff argues here that Defendants' "failure to inform [it] of the availability of any administrative appeals process, or to provide [it with] access to the [Southwest LTC Plan Document] itself" means that the claims procedure should be "deemed exhausted" under 29

C.F.R. § 2560.503-1. (Resp. 15-16). As noted previously, Plaintiff never provided Defendants' with any proof of its entitlement to pursue benefits on CW's behalf under the Plan. For that reason, Defendants were not required to inform it of the appeals process, or to furnish it with plan documents. *See Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1072 (6th Cir. 1994); *Barix*, 459 F. Supp. 2d at 625 ("[I]t would be unfair to penalize an administrator for failing to disclose plan documents to a third party who has not informed the administrator of its status as an assignee and putative beneficiary.").

On this record then, Memorial Hermann has not raised a genuine issue of material fact on whether the administrative remedies available under the Southwest LTC Plan were exhausted prior to the filing of this lawsuit. Nor has Plaintiff produced any evidence to show that an exception to the exhaustion requirement applies in this case. As a result, Defendants are entitled to summary judgment on Plaintiff's § 1132(a)(1)(B) claim. *See McGowin*, 363 F.3d at 559-60; *Gonzalez*, 547 F. App'x at 428.

**V. Conclusion**

Accordingly, it is **RECOMMENDED** that Defendants' motion for summary judgment be **GRANTED**.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208; copies of any such objections shall be delivered to the

chambers of Judge Vanessa D. Gilmore, Room 9513, and to the chambers of the undersigned, Room 7007.

**SIGNED** at Houston, Texas, this 7th day of June, 2016.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**